**AFFIRMED as MODIFIED and Opinion Filed May 14, 2021**



**In The**

## Court of Appeals
## Fifth District of Texas at Dallas

_____

**No. 05-19-01053-CR**
_____

**CARLOS EDUARDO SANCHEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-00735-R**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Goldstein.

This is an appeal from a conviction for attempted indecency with a child following a jury trial. We affirm the trial court's judgment as modified.

Carlos Eduardo Sanchez was indicted for indecency with a child, a second-degree felony offense. TEX. PENAL CODE ANN. § 21.11(a)(1). Sanchez pleaded not guilty and proceeded to a jury trial. The jury found Sanchez guilty of the lesser included offense of attempted indecency with a child. TEX. PENAL CODE ANN. § 15.01. The trial court assessed punishment at six years in prison, probated for eight years.

Sanchez presents two issues on appeal. In his first issue, Sanchez asserts the evidence is legally insufficient to support a conviction for attempted indecency with a child. In his second issue, Sanchez contends the judgment should be modified to reflect the correct statute for the offense of conviction and to reflect the trial court assessed punishment. The State agrees with Issue Two.

**Evidence at Trial**

M.W., who was eight years old at the time of the alleged offense, is the child-victim in this case. Sanchez's wife ran an after-school tutoring and a homeschooling program out of their residence. M.W. initially enrolled in the after-school tutoring program and later transitioned to the homeschool program. Sanchez worked nights and usually slept during the day, waking a few hours in the afternoon for lunch. At times Sanchez would help students with math.

M.W., age eleven at the time of trial, testified along with several other witnesses. On what became her last day at the Sanchez homeschool, M.W. testified that Sanchez's wife left the home for a dentist appointment. On M.W.'s way back to the living room after getting water from the kitchen, M.W. passed Sanchez's dark bedroom. Sanchez was lying on his bed and asked her to come in. M.W. went over to him and, while she stood by the bed, Sanchez tongue-kissed her, with his hand on her side. Sanchez then put his hand inside of her jeans and his thumb touched her private part. After kissing and touching her, Sanchez told M.W. not to tell his wife or J.C., a female occupant of the home, because his wife would get jealous. M.W.

–2–

placed a mark on State's Exhibit 5 to indicate where Sanchez had touched her and testified that Sanchez had touched her on the lower mark, underneath her clothing, and that she had to pull his hand out of her pants.

M.W.'s mother testified that she was outside cooking when Sanchez brought M.W. home. M.W. was quiet when she arrived, and her mother described M.W.'s behavior as "scared," "embarrassed," and "worried." After M.W. described events that made her mother believe something inappropriate had happened, she called Mrs. Sanchez to tell her that M.W. would no longer be homeschooled. M.W. did not want to go to the police, but she and her mother told Mrs. Sanchez what had occurred. M.W. told her public-school teacher about the incident a few months later, and upon receiving a phone call from the school principal, M.W.'s mother decided M.W. was ready to talk and reported the incident to the police.

Kimberly Skidmore, Assistant Director of Forensic Services at the Dallas Children's Advocacy Center, conducted M.W.'s forensic interview. Skidmore testified that M.W. mentioned the living room, where she performed schoolwork at her desk, the bathroom, kitchen, office, and Sanchez's bedroom. M.W. told Skidmore that, after going to the kitchen for a drink of water, she went back to her desk and Sanchez sat next to her on a bench. M.W. said Sanchez kissed her with an open mouth and used his tongue, and then put his hand on her "private" over her clothes. M.W. identified her "private" as the body part in front she used to urinate.

–3–

M.W. said Sanchez's hand felt wrinkly and she demonstrated how Sanchez rubbed her private, stating several times that she pushed Sanchez after he touched her.

G.T., who was sixteen when she testified, explained that she would arrive for homeschooling around 8 a.m., but that her mother would pick her up each day to have lunch and then bring her back for more homeschooling after lunch. G.T. stated that on the day of the alleged incident, Sanchez's wife went to a dentist appointment and instructed them to ask Sanchez if they needed any help. M.W. left her desk and G.T. became "worried" because M.W. "was taking really long." G.T. went into the kitchen to get water and saw Sanchez sitting on a tall dining chair with M.W. between his legs and his arms were around M.W.'s waist. G.T. pretended she did not see anything, got some water, and left the kitchen. A few minutes later, M.W. returned to her desk and told G.T. that Sanchez had kissed her, and that she wanted to go home. G.T. described M.W. as "really nervous," scared, and that she seemed "shaken up for a long time." When Sanchez's wife returned, M.W. asked to go home and Sanchez offered to take her home because he was leaving for work. M.W. left with Sanchez. The next day, Sanchez's wife asked G.T. if anything unusual had happened the day before and G.T. relayed what she had seen. About a week later, Sanchez's wife suggested going to G.T.'s home for her homeschooling and they finished out the year with that arrangement.

J.C. testified that she had lived at the Sanchez home with her baby since May 2015. On September 8, J.C. went into the kitchen and saw Sanchez in his chair

reading mail with M.W. standing beside him, and M.W.'s face looked upset. J.C. remembers receiving a call from M.W.'s mother about the incident to warn her because she had a baby, and J.C. told her about M.W.'s upset face. J.C. moved out of the Sanchez home approximately four to six weeks later.

Mrs. Sanchez described M.W. as sweet when it was time to play, but often uncooperative when it was time to do schoolwork. Mrs. Sanchez testified that she left the residence on September 8 shortly before a 4:00 p.m. dentist appointment. She first learned of M.W.'s allegations the next day from J.C. Mrs. Sanchez characterized her meeting with M.W. and her mother as M.W.'s mother suggesting information with "remember you told me this" and M.W. confirming the information.

Kelly Slaven, Chief Clinical Officer at the Dallas Children's Advocacy Center, testified as a child abuse expert. Ms. Slaven testified that children under ten often are unable to remember details of events, and that they may remember parts of events, but not in a linear order. Ms. Slaven related that it is common for children who experienced abuse to later remember less detail, or alternatively, to remember a different detail not discussed in their initial forensic interview.

The jury viewed portions of a videotaped interview between Sanchez and Detective Clark of the Dallas Police Department's Child Exploitation Unit from April 18, 2017. Detective Clark testified to details of the interview. During the interview, Sanchez admitted that he had hugged M.W. "three or four" times prior to

the day in question and stated, "I have to confess I like long hair and [M.W.] has long hair like my wife." Sanchez explained that when he hugged M.W., he stroked her hair from the top to the length of her hair. When asked if there was anything different about M.W.'s last day of homeschooling, Sanchez recounted that M.W. entered the kitchen, hugged him, and told him that she loved him. He said that after his wife was gone from the home, J.C. entered the kitchen and M.W. jumped back "like they caught us." J.C. then left the home. He said M.W. returned to the kitchen a few minutes later and again said, "I love you." Sanchez stated that he hugged her again and stroked her hair until G.T. entered the kitchen and M.W. backed away from him again, knocking over some boxes. Sanchez stated that he asked M.W., "[w]hat's the deal with all the hugging?" and told her to "go back to her books." Sanchez claimed M.W. then came into his bedroom and hugged him and put her arm around him and he could have kissed her on the cheek, but not on the mouth. Detective Clark testified that it is difficult for suspects to confess to a detective that they touch kids inappropriately, and it is typical for them to minimize their actions, so detectives look for corroboration of some details of the child's account. When asked if Sanchez appeared to be minimizing details, Detective Clark responded that Sanchez described M.W. as the aggressor and that he was correcting M.W.'s behavior, after admitting that his wife previously had told him that the way he hugged M.W. and stroked her hair was inappropriate. Based upon his experience, Detective Clark characterized the type of kiss and touch M.W. described as having

been used for sexual gratification. Detective Clark also saw no signs of coaching in M.W.'s testimony and stated that in his nine years of experience in this unit, there are rarely any witnesses because the offender waits for an opportunity.

Sanchez invites us to categorize the combined and cumulative force of the evidence presented to the jury as "ordinary caregiving activities." We decline. We find the evidence legally sufficient to support the jury verdict.

## Legal Sufficiency of the Evidence

**Standard of Review**

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict, and we ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). As the exclusive judge of the weight and credibility of the witnesses' testimony, the jury is free to accept or reject all or any part of a witness's testimony and resolve conflicting inferences from the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim. App. 1991). In determining legal sufficiency, we consider all direct and circumstantial evidence in the record, including admissible and inadmissible evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 577 U.S. 871 (2015). This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the

–7–

evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319; *Murray*, 457 S.W.3d at 448.

When performing an evidentiary legal sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases because circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs v State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

**Applicable Law**

A person commits the offense of indecency with a child younger than 17 years of age if the person engages in sexual contact with a child. TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, with the intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11(c)(1). A person commits attempted indecency with a child if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation

that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a).

**Application of Law to Facts**

The jury charge contained the lesser-included offense instruction. Sanchez argues the evidence was legally insufficient to support his conviction for attempted indecency with a child because [1] the State knew its complainant would not be credible, [2] the jury rejected the State's theory of the case, [3] there was insufficient evidence of specific intent to commit the greater offense, and [4] Sanchez did not engage in conduct that was more than mere preparation and tended to effectuate the commission of indecency with a child.

In looking at the entire record, including the contrary evidence presented, and giving deference to the factfinders' determinations of weight and credibility, it is clear the jury acted as rational factfinders in determining the evidence and testimony of witnesses presented by the State to be credible and sufficient to establish the essential elements of the offense beyond a reasonable doubt.

**A. Credibility of Complainant**

This court will not reassess credibility. Contrary to Sanchez's assertions that the State's opening statement was an admission that M.W. would not be credible, the full record of the opening statement reflects that the prosecutor's statements could be characterized as a recognition that child victims cannot be expected to

testify with the same clarity and ability as is expected of mature and capable adults. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

Sanchez argues that the jury necessarily rejected M.W.'s testimony that sexual touching actually occurred by finding him guilty of "attempted" indecency rather than "indecency with a child." In this regard, Sanchez assumes that the jury's failure to convict on the greater offense necessarily meant that the jury did not find M.W.'s testimony on sexual touching credible and offers alternative hypotheses to argue the remaining evidence is insufficient to support an inference of guilt.

The jury is the sole judge of each witness's credibility and can choose to believe all or any part of each witness's testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd), *cert. denied* 538 U.S. 963 (2003); *Fernandez*, 805 S.W.2d at 456 (factfinder may decide which version of declarant's story it believed). Because the factfinder is the sole judge of credibility and the weight to be given each witness's testimony, this court presumes the factfinder resolved conflicts in testimony, weighed all evidence, and drew reasonable inferences in a manner that supports the verdict. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Jackson*, 443 U.S. at 319; *Murray*, 457 S.W.3d at 448-49; *Tear,* 74 S.W.3d at 559. The State's burden is to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt. *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013). The factfinder's role is to choose which inference drawn from the evidence is most

reasonable, and this court's role is restricted to ensuring that legally sufficient evidence supported the verdict, viewing all evidence presented in the light most favorable to the verdict. *Laster v. State*, 275 S.W.3d 512, 517-18, 522-24 (Tex. Crim. App. 2009). Based upon the foregoing, we conclude the jury could have found the child witness to be credible.

## B. Jury's Alleged Rejection of State's Theory

Sanchez asserts that, because the jury found the evidence did not support a guilty verdict for the greater offense of indecency with a child, the jury rejected the State's theory of the case, and the evidence is therefore insufficient to support his conviction for the lesser included offense of attempted indecency with a child.

When requested by the State, submission of a lesser-included offense does not require some evidence in the record that would permit a jury rationally to find that the defendant, if guilty, is guilty only of the lesser offense. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009).[1] Because society has an interest in convicting and punishing people who are guilty of crimes, and the State has a primary mandate not to convict but to see that justice is done, the State can pursue a greater offense and a lesser included offense to provide the jury with the opportunity to decide whether conviction for the greater or lesser included offense is appropriate and avoid having acquittal as the only alternative. *Gray*, 298 S.W.3d at 650-51. We disagree that the

---

[1] In so holding overruled *Arevalo v. State*, 943 S.W.2d 887 (Tex. Crim. App. 1997), and abrogated *Hampton v. State*, 165 S.W.3d 691 (Tex. Crim. App. 2005).

jury's failure to convict Sanchez of the greater offense of indecency with a child supports an inference that the jury found evidence of an element shared with the lesser included offense lacked credibility, nor are we precluded from including that evidence in our sufficiency review of the lesser included offense. *See id*.

## C.     Evidence of Specific Intent to Commit Greater Offense

Sanchez asserts the evidence was legally insufficient for the jury to infer his specific intent to commit the greater offense of indecency with a child. The State did not have to prove Sanchez could have accomplished, or did actually accomplish, his purpose, only that he *had* such a purpose and committed an act beyond mere preparation. *Laster v State*, 275 S.W.3d at 522 (emphasis added). Rarely will there be direct evidence of what an accused intended, so the factfinder usually must infer intent from circumstantial evidence. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd).

A person's intent to arouse or gratify sexual desire can be inferred from the person's conduct, remarks, and all surrounding circumstances. *See McKenzie v. State,* 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981) (complainant's testimony that appellant placed his hand underneath her clothing and touched her genitals supports a finding of specific intent for indecency with a child); *Scott,* 202 S.W.3d at 409 (in light of surrounding circumstances, jury can infer intent to commit indecency with a child from the child's testimony that defendant touched her breasts). No oral expression of intent or visible evidence of sexual arousal is

–12–

necessary. *See Ryder v. State*, 514 S.W.3d 391, 396–97 (Tex. App.—Amarillo 2017, pet. ref'd); *Abbott v. State*, 196 S.W.3d 334, 340–41 (Tex. App.—Waco 2006, pet. ref'd) (evidence defendant touched body part prohibited by statute sufficient to infer intent to arouse and gratify sexual desire).

M.W. testified that Sanchez kissed her with an open mouth using his tongue, put his hand inside her pants, and that his thumb touched her genital area. After M.W. pulled Sanchez's hand out of her pants, he told her not to tell his wife or J.C. because his wife would be jealous. Sanchez admitted to hugging M.W., stroking her hair, and kissing her on the cheek in his bedroom. Additionally, Sanchez admitted that his wife had previously told him the way he touched M.W. was inappropriate.

The uncorroborated testimony of a child complainant is sufficient to support a conviction for aggravated sexual assault or indecency with a child, including the inference of specific intent. TEX. CODE CRIM. PROC. ANN. art. 38.07; *IslasMartinez v. State,* 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd); *Tear*, 74 S.W.3d at 560; *Billy v. State*, 77 S.W.3d 427, 428-29 (Tex. App.—Dallas 2002, pet. ref'd). However, this is not a case with just one child witness. The record includes testimony from two other lay witnesses–G.T. and J.C., M.W.'s mother, the forensic interviewer, the child abuse expert, the Detective, the video, and Sanchez's admissions. Deviations in details between M.W.'s trial testimony and her forensic interview two years prior, as explained by the State's child abuse expert is typical of children who experienced sexual abuse. Considering the testimony from the child,

–13–

combined with the cumulative evidence based upon observations, interviews, and experts, a rational jury could conclude that Sanchez intended to touch M.W.'s genitals to arouse or gratify his sexual desires. *See Romano v. State,* 612 S.W.3d 151, 157 (Tex. App.—Houston [14th Dist.] 2020, pet. filed); *Jones v. State*, 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.); *Gregory v. State,* 56 S.W.3d 164, 171-72 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd), *cert denied*, 538 U.S. 978 (2003).

## D. Conduct More Than Mere preparation

Sanchez contends that the record contains no evidence that he did any act amounting to more than mere preparation as required by the attempt statute. TEX. PENAL CODE ANN. § 15.01(a). There is an "imaginary line" that separates mere preparatory conduct, which is usually noncriminal, from an act that tends to effect the commission of an offense, which is always criminal conduct. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex. Crim. App. 1984); *Crawford v. State*, 562 S.W.3d 106, 111 (Tex. App.—Corpus Christi-Edinburg 2018, pet. ref'd). Where the imaginary line is to be drawn depends upon the nature of the crime attempted and must be considered on a case-by-case basis. *See Gibbons v. State*, 634 S.W.2d 700, 706–07 (Tex. Crim. App. [Panel Op.] 1982); *Crawford*, 562 S.W.3d at 111. This necessarily creates a "gray area" within which the imaginary line is to be drawn. *McCravy v. State,* 642 S.W.2d 450, 460 (Tex. Crim. App. 1980). The legislature did not intend to draw this line at the last proximate act. *Id.* Therefore,

the fact that an appellant could have taken further action without actually committing the offense does not render his actions nothing more than mere preparation. *See, e.g.*, *Crawford*, 562 S.W.3d at 112-13; *Farris v. State,* 506 S.W.3d 102, 106 (Tex. App.—Corpus Christi-Edinburg 2016, pet. ref'd) (citing *Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981)); *Jones*, 229 S.W.3d at 497-98 (evidence sufficient to show defendant's actions more than mere preparation where child testified that defendant "was rubbing up against her leg and thigh, she thought he whispered that he loved her, and afterward, he claimed that he thought she was [the child-victim's mother]").

Considering all evidence and resolving any conflicts between M.W.'s testimony, the corroborating circumstantial witness testimony, and Sanchez's version of events, a rational jury could conclude that Sanchez's acts crossed the line of "mere preparation" and that Sanchez tried but failed to effectuate sexual contact with M.W.'s genitals. Viewed in the light most favorable to the verdict, the cumulative force of all the evidence and the reasonable inferences that can be drawn therefrom support Sanchez's conviction. We find legally sufficient evidence supported the jury's verdict. Issue One is overruled.

**Modification of Judgment**

This Court has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so. *See Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas

–15–

1998, pet. ref'd), (citing *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993)).  A court of appeals may "modify the trial court's judgment and affirm it as modified."  TEX. R. APP. P. 43.2(b).

## A. Statutory Reference

Sanchez asserts that the trial court's judgment must be modified to reflect the correct statute for the offense of conviction.  The State agrees.  The judgment correctly describes the offense as "ATTEMPTED INDECENCY WITH A CHILD," but cites the statute for the offense as "21.11(A)(1)." The record shows Sanchez was convicted of attempted indecency with a child, rather than indecency with a child. The correct statute for the offense for which Sanchez was convicted is section 15.01 of the Texas Penal Code. TEX. PENAL CODE ANN. § 15.01(a); *see Parfait v. State*, 120 S.W.3d 348, 351 (Tex. Crim. App. 2003) (explaining that a person found guilty of an attempted offense is convicted under section 15.01, not the underlying Penal Code provision).  Accordingly, we modify the judgment to reflect that Sanchez was convicted under TEX. PENAL CODE ANN. § 15.01(a).

## B. Trial Court Assessed Punishment

Sanchez asserts that the trial court's judgment must be modified to reflect that the trial court assessed punishment rather than the jury.   The State Agrees.  Accordingly, we modify the judgment to reflect that the trial court assessed punishment rather than the jury.

We sustain Issue Two, modify the judgment as set forth in this opinion, and as modified, we affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
191053F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CARLOS EDUARDO SANCHEZ,
Appellant

No. 05-19-01053-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-17-00735-R.
Opinion delivered by Justice
Goldstein. Justices Partida-Kipness
and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the statement "21.11 (A)(1) Penal Code" under the heading "Statute for Offense" and **INSERT** the statement "15.01(a) Penal Code"

We **DELETE** the "x" mark next to the statement "Jury." under the heading "Punishment Assessed by Jury/Court/No election" on page 2 and **ADD** an "x" mark next to the statement "Court."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 14th day of May, 2021.